COMMONWEALTH *vs.* JOHN KANE.

Plymouth.    October 15, 1889. — November 30, 1889.

Present: FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Intoxicating Liquors — Common Nuisance.*

At the trial of a complaint on the Pub. Sts. c. 101, §§ 6, 7, for keeping a common
nuisance, there was evidence that the tenement in question was a dwelling-
house, being one of several opening upon an alley; that several gallons of
whiskey with utensils smelling of the same were found concealed in it; and that
men had been seen carrying bottles from the alley to a crowd of men at a little
distance, who after drinking therefrom showed signs of intoxication. The pre-

siding judge refused to rule, as requested by the defendant, that there was no evidence upon which the defendant could be convicted; but gave the request, that "the mere possession of intoxicating liquor in a dwelling-house would not authorize the jury to find that it was kept with intent to sell," adding that the quantity of liquors kept and the circumstances under which they were kept, or the fact that the dwelling-house was a place of common resort, would be evidence upon the question whether the liquors were kept for use or for sale. *Held*, that the defendant had no ground of exception.

COMPLAINT for keeping and maintaining a common nuisance, to wit, a certain tenement in Brockton for the illegal keeping and illegal sale of intoxicating liquors. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows.

There was evidence that the tenement in question was a dwelling-house, owned by the defendant and occupied by him and his family; that between this dwelling-house and another building on the same street was an alley about twelve feet wide, common to both and extending their entire depth; that there were three doors opening into the alley from tenements in such other building, and one from the defendant's dwelling-house; and that there was a lumber yard in the rear of and at some distance from the dwelling-house, to which there was access from the alley. A police officer testified, for the government, that on Sunday and Monday, February 4 and 5, 1889, he saw several men, at different times, carrying bottles from the alley to a crowd of men in the lumber yard; that some of these men drank from the bottles, and subsequently there were signs of intoxication in the crowd; that he did not know in any instance what was in the bottles, nor could he see from which of the tenements or doors leading into the alley the men who brought the bottles to the crowd came, or that they passed into or from either of the doors, or either of the tenements; that on Monday evening police officers searched the defendant's tenement; that the dining-room was sheathed on all sides with wood to a height of from three to four feet from the floor; that a piece consisting of four boards of this sheathing was found to be loose; and that upon removing them a hollow place was disclosed in which were found concealed two two-gallon jugs, one full and the other partly full of whiskey, a pitcher with from a pint to a quart of whiskey, two tunnels, one of which was wet, and also an empty jug smelling of whiskey.

The defendant requested the judge to rule as follows:

"1. That the mere possession of intoxicating liquor in a dwelling-house would not authorize the jury to find that it was kept with intent to sell. . . . 3. That upon all the evidence in this case the defendant cannot be legally convicted of the offence charged in this complaint."

The judge declined to make the third ruling, but gave the first request, with this modification: " that the mere possession of intoxicating liquor in a dwelling-house would not authorize the jury to find that it was kept with intent to sell; but the fact that such dwelling-house is a place of common resort, or that a stock of liquors was kept there, and the circumstances under which the stock of liquors was kept, would be evidence for the jury upon the question whether such stock of liquors was kept for use in the defendant's family, or as merchandise for sale."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*A. P. French,* for the defendant.

*A. J. Waterman,* Attorney General, for the Commonwealth.

FIELD, J. The court gave the first ruling requested, and, in addition, said in substance, that the stock of liquors kept, and the circumstances under which the liquors were kept, or the fact that the dwelling-house was a place of common resort, would be evidence upon the question whether the liquors were kept for use or for sale.

We think that the evidence recited in the exceptions, of the quantity of whiskey found, and of the manner in which it was concealed, and of the utensils found with it which smelt of whiskey, considered in connection with the evidence of the men seen in the alley with bottles, and of their drinking from the bottles, and of the subsequent signs of intoxication, had some tendency to show that the liquors in the dwelling-house were kept for sale, and that these men obtained intoxicating liquors there. It did not appear that, in any other of the tenements which opened upon the alley, intoxicating liquors were kept. The jury must have understood that it was for them to determine whether this dwelling-house was a place of common resort. We see no error in the rulings.

*Exceptions overruled.*